UNITED STATES  DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NUCLEAR INFORMATION AND
RESEARCH SERVICES; COMMITTEE TO
BRIDGE THE GAP; PUBLIC CITIZEN, INC.;
REDWOOD ALLIANCE; and SIERRA CLUB,

    Plaintiffs,

  v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION RESEARCH AND
SPECIAL PROGRAMS ADMINISTRATION
and NORMAN Y. MINETA, Secretary of
Transportation,

    Defendants.

_____/

No. C 04-4740 MHP

**MEMORANDUM & ORDER**
**Re: Defendants' Motion to Dismiss**

   This action seeks to enjoin the enforcement of a final rule issued by the United States Department of Transportation Research and Special Programs Administration revising certain regulations related to the transport of radioactive materials.  Now before the court is defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

   Plaintiffs Nuclear Information and Research Services, Committee to Bridge the Gap, Redwood Alliance, and Sierra Club are nonprofit environmental advocacy and educational organizations.  Plaintiff Public Citizen, Inc. is a nonprofit research, lobbying, and advocacy organization that, among other activities, engages in advocacy for more stringent regulation of the nuclear industry.  The United States Department of Transportation ("DOT") Research and Special Programs Administration and Secretary of Transportation

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Norman Y. Mineta (collectively "defendants") are responsible for implementing the Federal Hazardous

2   Materials Transportation Act, 49 U.S.C. § 5101 et seq., which governs the transportation of hazardous

3   materials "in commerce." Id. § 5101.  The Act authorizes the DOT to promulgate regulations classifying

4   certain materials, including radioactive materials, as "hazardous" and prescribing the means for the safe

5   transport of such materials.  Id. § 5103. Pursuant to a 1979 Memorandum of Understanding ("MOU")

6   between the DOT and the Nuclear Regulatory Commission ("NRC"), the DOT promulgates regulations

7   governing the transportation of radioactive materials in consultation with NRC.  See 44 Fed Reg. 38,690

8   (July 2, 1979).

9       Beginning in 1999, the DOT and NRC undertook a joint rulemaking in which they sought to amend

10  the radioactive materials transportation regulations codified at 49 C.F.R. parts 171 through 180.  After

11  receiving extensive public comment, the DOT, in coordination with the NRC, promulgated a final rule

12  revising various provisions of those regulations on January 26, 2004.  See 69 Fed. Reg. 3,631 (Jan. 26,

13  2004).  The revised regulations apply to the transport of radioactive substances by rail, aircraft, and sea as

14  well as to the carriage of such materials on public highways.  Id. at 3,693-96 (listing revisions to 49 C.F.R.

15  pts. 174-77).

16      On November 9, 2004, plaintiffs filed the instant action seeking to enjoin the enforcement of the

17  revised radioactive materials regulations on the ground that they were promulgated in violation of the

18  National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq.  Specifically, plaintiffs allege that

19  defendants violated NEPA by failing to prepare an Environmental Impact Statement ("EIS") that identifies

20  the environmental effects of the radioactive materials rule and evaluates alternatives to the DOT's chosen

21  course of action.  See id. § 4332.  In addition to this district court action, plaintiffs have filed a petition in

22  the Ninth Circuit naming the NRC and the United States as respondents and challenging the radioactive

23  materials rule on grounds that it was not issued in accordance with the Atomic Energy Act, NEPA, the

24  Administrative Procedure Act ("APA"), and "other applicable law."  Glazer Decl., Exh. 1 at 2.

25      On January 10, 2005, defendants moved to dismiss plaintiffs' complaint for lack of subject matter

26  jurisdiction, arguing  that the court of appeals has exclusive jurisdiction over plaintiffs' action under the

27

28

2

1  Administrative Orders Act (hereinafter "Hobbs Act"), 28 U.S.C. § 2341 et seq.  Defendants' motion is

2  now pending before the court.

3

4  LEGAL STANDARD

5         A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the subject matter

6  jurisdiction of the court.  See, e.g., Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039-40 (9th

7  Cir. 2003), cert. denied, __ U.S. __, 124 S. Ct. 2067 (2004).  The plaintiff bears the burden of

8  establishing the propriety of the court's jurisdiction.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S.

9  375, 377 (1994).  Consequently, a Rule 12(b)(1) motion will be granted if the complaint, when considered

10 in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction.  Savage, 343

11 F.3d at 1039 n.2; Thornhill Publ'g Co. v. General Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir.

12 1979).  Alternatively, a defendant may seek dismissal under Rule 12(b)(1) by presenting evidence to refute

13 the jurisdictional facts alleged in the complaint.  Savage, 343 F.3d at 1039 n.2; Thornhill Publ'g, 594 F.2d

14 at 733.  Once the defendant has introduced such evidence, the plaintiff "must furnish affidavits or other

15 evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  Savage, 343 F.3d at

16 1039 n.3 (citation omitted).

17

18 DISCUSSION

19        In adjudicating the instant motion, the court is called upon to determine whether this court may

20 exercise jurisdiction over plaintiffs' claim that the DOT's revised hazardous materials regulations were

21 issued in violation of NEPA.  Under NEPA, federal agencies must "include in every recommendation or

22 report on proposals for legislation and other major Federal actions significantly affecting the quality of the

23 human environment [] a detailed statement . . . [describing] the environmental impact of the proposed

24 action."  42 U.S.C. § 4332(2)(C)(i); Cetacean Cmty. v. Bush, 386 F.3d 1169, 1179 (9th Cir. 2004).  The

25 EIS requirement is intended to compel federal agencies to take a "hard look" at the environmental

26 consequences of their proposals.  Ocean Advocates v. United States Army Corps of Eng'rs, 361 F.3d

27 1108, 1124 (9th Cir. 2004) (quoting Kern v. United States Bureau of Land Mgmt., 284 F.3d 1062, 1066

28

UNITED STATES DISTRICT COURT
For the Northern District of California

3

(9th Cir. 2002)).  Consequently, "[a]n EIS must be prepared if substantial questions are raised as to whether a project may cause significant degradation of some human environmental factor."  Id. (quoting Idaho Sporting Cong. v. Thomas, 137 F.3d 1146, 1149 (9th Cir.1998)) (original emphasis, alterations, and quotation marks omitted).

A district court generally has jurisdiction over NEPA claims pursuant to 28 U.S.C. § 1331.  See, e.g., Surfrider Found. v. Dalton, 989 F. Supp. 1309, 1314-15 (S.D. Cal. 1998), aff'd, 196 F.3d 1057 (9th Cir. 1999).  Moreover, although NEPA  itself does not expressly provide for judicial review, claims that an agency unlawfully failed to prepare an EIS or that it prepared an inadequate EIS have been held to be "final agency actions" reviewable under Chapter 7 of the APA, 5 U.S.C. § 701 et seq.  Cetacean Cmty., 386 F.3d at 1179; Ocean Advocates, 361 F.3d at 1118.  Thus, the allegations in plaintiffs' complaint give rise to a federal question over which this court could ordinarily exercise jurisdiction.

However, a number of federal statutes provide for direct review of certain agency actions in the court of appeals.  Where such statutes apply, it is well-established that "[s]pecific grants of exclusive jurisdiction to the courts of appeals override general grants of jurisdiction to the district courts."  Carpenter v. Department of Transp., 13 F.3d 313, 316 (9th Cir. 1994).  Accordingly, if an action for judicial review falls within the scope of a federal statute that designates the court of appeals as the exclusive jurisdiction for the review of a particular agency decision, the district court is divested of its jurisdiction to entertain such actions under 28 U.S.C. § 1331.  Id.

The specific grant of jurisdiction relevant to the instant action is set forth in the Hobbs Act, which vests in the court of appeals exclusive jurisdiction over actions seeking judicial review of "all final agency actions described in section 20114(c) of title 49," a provision codifying section 202(f) of the Federal Railroad Safety Act of 1970.  28 U.S.C. § 2342(7).  In turn, 49 U.S.C. § 20114(c) provides in relevant part that "a final action of the Secretary of Transportation under [Title 49, Subtitle V, Part A] or, as applicable to railroad safety, chapter 51 or 57 of [Title 49] shall be brought in an appropriate court of appeals as provided in [the Hobbs Act]."  49 U.S.C. § 20114(c).  The instant action involves regulations promulgated pursuant to chapter 51 of Title 49, 49 U.S.C. §§ 5101-27, which codifies the Hazardous Materials Transportation Act.  Thus, it is apparent from the face of the relevant judicial review provisions

4

UNITED STATES DISTRICT COURT
For the Northern District of California

1    that an action challenging the validity of those regulations, *as applicable to railroad safety*, must be

2    brought in the court of appeals.

3         Nevertheless, as noted above, the DOT regulations at issue here govern the transport of radioactive

4    substances by road, air, and sea as well as by rail.  This gives rise to the possibility that the district court

5    would retain jurisdiction to review those portions of the radioactive materials rule that are unrelated to rail

6    transport, while the court of appeals would have exclusive jurisdiction over any part of the rule that is

7    "applicable to railroad safety."  In Rudd v. United States Department of Labor, 347 F.3d 1086 (9th Cir.

8    2003), the Ninth Circuit faced a similar question that arose in the context of determining its own jurisdiction

9    over a petition for judicial review.  The case before the court arose out of the Department of Labor

10   Administrative Review Board's decision to approve a settlement of claims under the whistleblower

11   provisions of the Clean Air Act, 42 U.S.C. § 7622(b), and the Comprehensive Environmental Response,

12   Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9610(b).  Rudd, 347 F.3d at 1087.  The

13   claimant subsequently sought to undo the settlement, and after the Board denied his request to do so, he

14   filed a petition for review of the Board's decision in the Ninth Circuit.  Id.

15        Before reaching the merits of the petition, however, the Ninth Circuit had to address what it

16   characterized as the "knotty" jurisdictional issue that it raised.  Id.  This issue arose from the fact that the

17   Clean Air Act vested exclusive jurisdiction over the petitioner's whistleblower claim in the court of appeals,

18   see 42 U.S.C. § 7622(c), whereas his CERCLA claim, if freestanding, would have been properly filed in

19   district court, see 42 U.S.C. §§ 9610(b), 9613(b).  The Ninth Circuit resolved the question in favor of its

20   own jurisdiction, holding that "the court of appeals should entertain a petition to review an agency decision

21   made pursuant to the agency's authority under two or more statutes, at least one of which provides for

22   direct review in the courts of appeals, where the petition involves a common factual background and raises

23   a common legal question."  Rudd, 347 F.3d at 1090.

24        The instant action presents a slightly different question.  As the Rudd panel observed, the court's

25   holding does not directly address the scope of a district court's jurisdiction over the kind of "mixed agency

26   decision" that the court of appeals faced in that case.  Id. at 1090 & n.5 (internal quotation marks omitted).

27   Indeed, the court expressly declined to decide whether its jurisdiction was concurrent or exclusive with

28

5

UNITED STATES DISTRICT COURT
For the Northern District of California

1    respect to the aspects of the petitioner's claims that would otherwise give rise to original jurisdiction in the

2    district court.  Id. at 1090.  In addition, Rudd can be distinguished from the instant action on the ground that

3    the conflict between district and appellate court jurisdictions that the Ninth Circuit confronted arose from

4    incompatible provisions of two separate statutes, whereas the issue here involves the application of a single

5    jurisdictional provision in the Railroad Safety Act.

6         In short, there is nothing in Rudd that expressly forecloses the possibility that this court might

7    exercise jurisdiction over certain aspects of plaintiffs' claims.  In fact, the Rudd court itself speculated in

8    dicta that its own jurisdiction over a "mixed agency decision" might be concurrent with the district court

9    "insofar as [that decision] rests upon a statute giving rise to district court jurisdiction."  Id. at 1090 n.5

10   (internal quotation marks omitted).  However, were the Ninth Circuit to so hold, it would clearly be

11   adopting a minority view.  The weight of authority, including the holdings of panels in Second and Seventh

12   Circuits, favors the view that the jurisdiction of the court of appeals in such cases is exclusive.  See Sutton

13   v. United States Dept. of Transp., 38 F.3d 621, 625 (2d Cir. 1994) (holding that the court of appeals has

14   exclusive jurisdiction over agency determinations that are based "in substantial part" on a statutory provision

15   providing for exclusive review by the appellate court); Suburban O'Hare Comm'n v. Dole, 787 F.2d 186,

16   192-93 (7th Cir.) ("If a decision of an administrative agency is based, in substantial part, on a statutory

17   provision providing for exclusive review by a court of appeals, then the entire proceeding must be reviewed

18   by a court of appeals."), cert. denied, 479 U.S. 847 (1986); see also Shell Oil Co. v. FERC, 47 F.3d

19   1186, 1195 (D.D.C. 1995) ("[W]here an agency order arising from a common factual background and

20   addressing a common question of law relies on two statutory bases that give rise to separate paths for

21   judicial review, the entire order should be reviewed in a comprehensive and coherent fashion, and that

22   review should take place in the court of appeals.").  In reaching this conclusion, these courts have identified

23   a number of policy considerations that support consolidated review of mixed agency decisions in the court

24   of appeals, including the relative expertise that appellate courts bring to the task of conducting an on-the-

25   record review of completed administrative proceedings and the inefficiencies that follow from subjecting a

26   single agency decision to multiple levels of review in the district and circuit courts.  See generally Rudd, 347

27   F.3d at 1090 (reviewing cases).  However, what is undoubtedly the most persuasive reason for vesting

28

6

UNITED STATES DISTRICT COURT
For the Northern District of California

1   exclusive jurisdiction over such actions in the court of appeals is the practical benefit of litigating all claims

2   arising from a single agency decision in the same forum.  Accord id. at 1090 (concluding that the

3   petitioner's "petition for review [was] best adjudicated in one proceeding because it challenge[d] a single,

4   indivisible decision"); see also Sutton, 38 F.3d at 625 (observing that "[t]he policy behind having a special

5   review procedure in the first place . . . disfavors bifurcating jurisdiction over various substantive grounds

6   between the district court and the court of appeals").  Where a district court lacks jurisdiction to review

7   certain aspects of an agency's decision—those aspects in this case being the provisions of the radioactive

8   materials rule related to railroad safety—such a benefit can only be achieved by a rule that grants the circuit

9   court exclusive jurisdiction to review the decision in the its entirety.

10          Seeking to avoid the clear implication of such a rule, plaintiffs engage in a laborious (and labored)

11   analysis of the legislative history leading up to the passage of the "non-substantive" 1994 amendment to the

12   Railroad Safety Act's judicial review provision, 49 U.S.C. § 20114(c).  In essence, plaintiffs' argument

13   amounts to a claim that the phrase "as applicable to railroad safety," which defines the scope of direct

14   appellate review of hazardous materials regulations, actually means "to the extent solely applicable to

15   railroads."  The origin of this narrowing construction of section 20114(c)'s jurisdictional provision is a June

16   11, 1991 draft of the revised statutory language, which included the "solely applicable to railroads"

17   language on which plaintiffs rely.  See Railroad Safety Programs: Hearings Before the Subcomm. on

18   Transportation and Hazardous Materials of the House Comm. on Energy and Commerce, 102 Cong., 1st

19   Sess., at 110-11 (1991).  Yet the court could just as easily draw a contrary inference from the absence of

20   the "solely applicable" phrase in the final statute and conclude that the revised statutory text counsels against

21   reading such a limitation into the contested provision.  Indeed, one could certainly argue that any ambiguity

22   in the legislative history of section 20114(c) should be resolved in favor of broad appellate court

23   jurisdiction, given that it is the court of appeals rather than the district court that is ordinarily charged with

24   reviewing the final actions of agencies within the DOT.  See, e.g., 28 U.S.C. § 2342(5) (granting the court

25   of appeals exclusive jurisdiction to review rules, regulations, and final orders of the Surface Transportation

26   Board); 49 U.S.C. § 46110(a) (conferring jurisdiction on the court of appeals to review final orders of the

27   Federal Aviation Administration).

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   While one might debate whether it is proper to draw such an inference from a purportedly non-

2   substantive amendment to the Railroad Safety Act, the fact that one is able to do so attests to the

3   ambiguous nature of section 20114(c)'s legislative history.  In light of that fact, the sounder course is to rely

4   on the relatively clear language of the statutory text and interpret it according to the ordinary meaning of the

5   words therein.  Cf. California Dept. of Soc. Servs. v. Thompson, 321 F.3d 835, 853 (9th Cir. 2003)

6   (quoting Carson Harbor Vill. Ltd. v. Unocal Corp., 270 F.3d 863, 877 (9th Cir. 2001)) ("Courts look at

7   legislative history where the plain language is unambiguous only if 'the legislative history clearly indicates that

8   Congress meant something other than what it said.'").  The court therefore finds no reason to limit the

9   appellate court's original jurisdiction under the Railroad Safety Act to hazardous materials regulations that

10  are "solely" applicable to railroad safety.

11  In any event, the problem with plaintiffs' reading of section 20114(c) is not so much that it is wrong

12  (although it is), but rather that it fails to address the question presented by defendants' motion.  Even

13  assuming that plaintiffs' interpretation of the statute is correct, it is apparent that at least one part of the

14  challenged rulemaking falls within the scope of the "solely applicable to railroad safety" construction that

15  plaintiffs advocate.  See 69 Fed. Reg. at 3,693 (amending 49 C.F.R. pt. 174 (Carriage By Rail)).  Thus,

16  regardless of how the court chooses to interpret section 20114(c), it is still confronted with a situation

17  where some provisions of the regulations at issue here are "applicable to railroad safety" (and thus subject

18  to the exclusive jurisdiction of the court of appeals), while other provisions are not.  Nothing in the text or

19  legislative history of the Railroad Safety Act suggests that Congress even contemplated where original

20  jurisdiction would lie in actions seeking judicial review of such "multimodal" rulemaking, and there is

21  certainly no suggestion that Congress conclusively resolved this question one way or another.

22  In the absence of such a clear expression of congressional intent, the court finds the considerations

23  that led the Second and Seventh Circuits to assign the court of appeals the task of reviewing such mixed

24  agencies decisions to be equally apposite here.  Even plaintiffs must concede that certain aspects of DOT

25  rulemaking under the Hazardous Materials Transportation Act—in their view, the promulgation of

26  regulations that are solely applicable to railroad safety—are directly and exclusively reviewable by the court

27  of appeals.  Yet here, as will often be the case, the aspects of the DOT's radioactive materials rule that are

28

8

"applicable to railroad safety" are legally and factually intertwined with other aspects of the same rule that would not otherwise be subject to direct appellate review. Under similar circumstances, the <u>Rudd</u> court observed that "the interests of assuring a forum capable of treating the case coherently might justify the comparatively modest displacement of the district court." 347 F.3d at 1090 (quoting <u>Shell Oil</u>, 47 F.3d at 1195). This court finds these interests to be dispositive here and therefore holds that exclusive jurisdiction over the instant action lies with the court of appeals. For this reason, defendants' motion to dismiss for lack of subject matter jurisdiction must be granted.

<u>CONCLUSION</u>

For the foregoing reasons, the court GRANTS defendants' motion to dismiss for lack of subject matter jurisdiction.

IT IS SO ORDERED.

Dated: May 31, 2005

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

ENDNOTES